FILED
U.S. DISTRICT COURT
EASTERN DISTRICT ARKANSAS

AUG 22 2025

TAMMY H. DOWNS, CLERK
By: [signature] DEP CLERK

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

| | |
|---|---|
| YVONNE HOUSTON,<br><br>Plaintiff,<br><br>vs.<br><br>OZARK AUTOMOTIVE DISTRIBUTORS, INC. d/b/a O'REILLY AUTO PARTS, SONYA SHRUM, ALEX BOYD, AND RICKY SCOGGINS,<br><br>Defendants. | Case No.: 4:25-cv-859-JM<br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

Plaintiff Yvonne Houston (hereinafter "Plaintiff"), by and through her attorneys, Consumer Attorneys PLLC, upon personal knowledge as to herself and upon information and belief as to other matters, respectfully brings this Complaint against Defendants Ozark Automotive Distributors, Inc. d/b/a O'Reilly Auto Parts (hereinafter "Ozark" or the "Corporate Defendant"), Sonya Shrum ("Shrum"), Alex Boyd ("Boyd"), and Ricky Scoggins ("Scoggins") (Shrum, Boyd, and Scoggins collectively hereinafter the "Individual Defendants") (the Corporate Defendant and the Individual Defendants collectively hereinafter the "Defendants"), and alleges as follows:

## INTRODUCTION

1. This is a civil rights complaint for discrimination, retaliation, creating of hostile work environment and wrongful termination in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981 ("Section 1981") and the Arkansas Civil Rights Act ("ACRA"), Ark. Code Ann. § 16-123-101 *et seq.*

2. From March 2024 to August 22, 2024, Plaintiff was employed as a Parts Specialist with Defendants.

This case assigned to District Judge Moody
and to Magistrate Judge Harris

3. During this time, Plaintiff was subjected to repeated incidents of racial discrimination, including offensive racial slurs from a supervisor, disparate treatment in scheduling and discipline, and the denial of equal access to workplace policies and benefits.

4. After reporting these issues through the company's internal channels, she was targeted by management, had her work hours reduced, was excluded from overtime opportunities, and ultimately faced an unlawful retaliatory termination.

**JURISDICTION AND VENUE**

5. This Court has jurisdiction of Plaintiff's federal claim pursuant to 28 U.S.C. §§ 1331 and 1343.

6. The Court also has supplemental jurisdiction over Plaintiff's related claims arising under State and local laws pursuant to 28 U.S.C. § 1367.

7. Venue is proper under 28 U.S.C. § 1391 because all of the conduct complained of occurred within this District.

**PARTIES**

8. Plaintiff is an adult individual who is and was a resident of the State of Arkansas within the County of Dallas.

9. Plaintiff was employed by the Defendant in the State of Arkansas during the period of March 2024 through August 22, 2024.

10. Defendant is a business entity formed under the laws of Arkansas with a primary office located at 320 S. Izard Street, Little Rock, Arkansas 72201.

11. Individual defendants are adults who are and were residents of the State of Arkansas.

## STATEMENT OF FACTS

12. Plaintiff has been employed by Defendants since approximately March 2024 through August 22, 2024 at Store #840 located in Arkansas.

13. However, this period was preceded by six (6) years of dedicated service with O'Reilly Auto Parts in Wisconsin, where Plaintiff consistently demonstrated a strong work ethic, reliability, and a commitment to excellence.

14. The transfer to the Arkansas location in March 2024 was a continuation of Plaintiff's longstanding employment with the company, and – during this time – Plaintiff continued to uphold the high standards of performance and professionalism that had characterized her history of service to Defendants in Wisconsin.

15. Plaintiff's experience and institutional knowledge made her a valuable asset to the team, and performance remained consistent with the expectations and responsibilities of the role.

16. She was therefore eminently qualified for her position.

17. Notwithstanding the foregoing, Plaintiff was discriminated against based on her race in violation of the law.

18. In March 2024, Plaintiff underwent a performance evaluation conducted by Store Manager Ricky Scoggins (hereinafter "Scoggins").

19. Shortly thereafter, in early April, Plaintiff discovered that her vacation time had not appeared in her employee profile and raised the issue with Scoggins, who claimed he would investigate.

20. At the same time, Plaintiff also experienced a payroll discrepancy due to her recent transfer from Wisconsin to Arkansas.

21. The issue was ultimately resolved after she contacted the company's main office in Springfield, Missouri.

22. Despite her full-time employment status, Plaintiff was later informed by Human Resources Department that she was listed as a part-time employee, rendering her ineligible for vacation or sick leave.

23. Plaintiff also discovered she had been underpaid at $13.00 per hour, despite assurances from management that her rate would be $14.00 per hour, and she was never issued retroactive pay.

24. When Plaintiff's employment status was eventually corrected, she was improperly charged insurance premiums twice.

25. In late April 2024, Plaintiff filed a complaint through the company's internal reporting system, citing favoritism in scheduling as to employees who are not African American like her, disparities in time-off approvals, and violations of company policy.

26. In early May, Defendant's District Manager Boyd visited the store to investigate the complaint and confronted Plaintiff, directly stating, *"If you don't like it, you can leave."*

27. Later that same day, Plaintiff overheard Boyd and store management stating that she needed to be terminated.

28. This coincided with new, retaliatory restrictions, including a sudden directive that she could no longer have her phone on the sales floor.

29. On May 4, 2024, Plaintiff reported to work as scheduled and opened the store alongside assistant manager Sonya Shrum (hereinafter "Shrum").

30. Upon beginning her shift, Plaintiff asked what tasks needed to be completed that morning.

31. Shrum stated that cycle counts were required; however, Plaintiff had already begun resetting a planogram.

32. When Plaintiff respectfully inquired why all directives seemed to be coming from District Manager Boyd, Shrum became visibly agitated.

33. In response, Shrum yelled at Plaintiff and ordered her to *"get your black ass out,"* further stating, *"We don't want you here anyway."*

34. This hostile and racially charged outburst effectively resulted in Plaintiff being terminated on the spot.

35. Plaintiff immediately sent a text message Scoggins to report the incident.

36. Scoggins responded that Plaintiff had not been terminated and assured her that he would address the matter.

37. Nevertheless, no corrective action on the part of Defendant's management appears to have been taken.

38. Shortly after the confrontation, Shrum went to the back room and placed a phone call.

39. Within approximately ten (10) minutes, her husband arrived at the store, and they remained in the back room together for about twenty minutes.

40. While standing at the front counter shortly thereafter, Plaintiff overheard Shrum make a further racially derogatory and inflammatory remark to her husband, stating, *"This nigga bitch got to go."*

41. On May 31, 2024, Plaintiff was contacted at approximately 7:30 a.m. by District Manager Boyd, despite her shift not being scheduled to begin until 3:15 p.m.

42. Boyd requested that Plaintiff come in early to discuss her recent complaint regarding a reduction in scheduled work hours, particularly during holiday weeks.

43. By the time Plaintiff arrived for her scheduled shift, Boyd had already spoken with other employees.

44. He then asked Plaintiff to step outside the back door to speak with her privately.

45. During the conversation, Plaintiff complained about the racism she endured and raised her concerns regarding the inconsistent scheduling practices and the noticeable reduction in her work hours.

46. Boyd responded by stating that he was aware she had filed the complaint, to which Plaintiff confirmed.

47. On June 4, 2024, Plaintiff was approached at work by Regional Manager Justin Fortune and District Manager David, who informed her they were conducting an internal investigation into workplace concerns.

48. Prior to said meeting, Plaintiff had reported multiple instances of racial discrimination at the store and had received warnings from coworkers and customers that management was attempting to remove her.

49. Following the meeting, Plaintiff's scheduled hours were significantly reduced, and she was excluded from overtime opportunities — constituting a clear act of retaliation.

50. On June 5, 2024, Plaintiff observed colleagues using their personal phones during working hours, despite having previously been instructed — uniquely and without explanation — not to do so.

51. On June 7, 2024, an incident occurred involving a customer, Randy, who attempted to use another employee's mechanic account to make a purchase.

52. After Plaintiff refused to install the battery under those circumstances, Shrum instructed her to do so regardless.

53. Although Plaintiff complied with the instruction to install the battery, the incident was later mischaracterized by the Defendant and used as a pretextual basis for her termination.

54. Specifically, the Defendant falsely accused Plaintiff of theft involving a returned auto part, despite no credible evidence supporting such a claim.

55. Said accusation followed a series of retaliatory actions after Plaintiff engaged in protected activity, including complaints of racial discrimination and unequal treatment in the workplace.

56. Ultimately, Plaintiff's employment was wrongfully terminated by Defendant on August 22, 2024.

## CAUSES OF ACTION

### COUNT ONE
### VIOLATION OF 42 U.S.C. § 1981
### DISCRIMINATION IN EMPLOYMENT CONTRACT

57. Plaintiff re-alleges, and incorporates here by reference, all allegations contained in the paragraphs above.

58. Plaintiff is an individual entitled to the protections of 42 U.S.C. § 1981.

59. Following Plaintiff's transfer to the Arkansas location in March, Defendants have subjected Plaintiff to varied terms and conditions of her employment contract, all on account of her race, in violation of her rights as protected by 42 U.S.C. § 1981.

60. Defendants have subjected Plaintiff to disparate treatment on account of her racein that Caucasian employees have been afforded more favorable terms and conditions of their

employment due to their race (Caucasian) as compared to the Plaintiff (African American), in violation of her rights as protected by 42 U.S.C. § 1981.

61. For instance, Plaintiff was misclassified as a part-time employee, rendering her ineligible for vacation or sick leave, despite her full-time employment status.

62. Caucasian employees performing the same or similar work as Plaintiff, and who started around the same time as Plaintiff, were properly classified as full-time employees, and were favored in scheduling matters, such as time-off approvals, compared to employees who are African American like her.

63. Further, Plaintiff was underpaid, and was never issued retroactive pay.

64. Meanwhile, Caucasian employees were scarcely subject to underpayment.

65. Following Plaintiff's filing an internal complaint, Defendants received a sudden directive that she could no longer have her phone on the sales floor, despite Caucasian employees using their phones during working hours with no repercussions.

66. Furthermore, Plaintiff was the subject of a racially charged outburst by Defendant Shrum, which included racially derogatory and inflammatory remarks both directed at and overheard by Plaintiff.

67. Despite a meeting in which Plaintiff was informed that an internal investigation would be conducted regarding her concerns, Plaintiff's scheduled hours were significantly reduced, and she was excluded from overtime opportunities, constituting deprived enjoyment of the benefits of her employment contract.

68. Caucasian employees were not subject to the same or similar reductions in scheduled hours and denied opportunities following their internal complaints.

69. Soon after Plaintiff was wrongfully terminated as a result of Defendants' baseless, false accusation of that Plaintiff had committed theft, an accusation which was Plaintiff had never witnessed hurled at any Caucasian employee.

70. Given Defendants' treatment of Plaintiff following her transfer to the Arkansas location preceding her termination, it is clear that Defendants wrongfully terminated Plaintiff's contract on the basis of her race.

71. This final adverse action by Defendants caused Plaintiff to be unable to enjoy the terms of her employment contract.

72. Defendants' unlawful employment practices were and are intentional.

73. The above-mentioned acts of disparate treatment were committed by Defendants to the detriment of Plaintiff, all on account of her race, in violation of her rights as protected by 42 U.S.C. § 1981.

74. Defendants' racially motivated actions have proximately caused damages to Plaintiff.

Retaliation as a separate cause of action?

**COUNT TWO**
**VIOLATION OF THE ARKANSAS CIVIL RIGHTS ACT: DISCRIMINATION ON THE BASIS OF RACE AND/OR NATIONAL ORIGIN**

75. Plaintiff re-alleges, and incorporates here by reference, all allegations contained in the paragraphs above.

76. Plaintiff is a member of a protected class on the basis of race. She is an African-American woman.

77. Plaintiff, in all respects, was performing her job in a manner that was consistent with Defendant's legitimate business expectations.

78. Defendant discriminated against Plaintiff as described above, including but not limited to unjustly reducing her working hours, subjecting her to a hostile work environment, denying her promotions and overtime opportunities, accusing her of acts constituting an offense and wrongfully firing her.

79. Defendant also retaliated against Plaintiff when she engaged in protected activity, including complaints of racial discrimination and unequal treatment in the workplace.

80. Defendant failed to take any meaningful corrective action in response to Plaintiff's complaints and instead permitted a hostile work environment to persist.

81. This pattern of conduct on the part of Defendant clearly constitutes a violation of Plaintiff's rights under ACRA.

82. Defendant's actions were taken with a willful and wanton disregard of Plaintiff's rights under the ACRA, Ark. Code Ann. § 16-123-101, *et seq*.

83. As a direct and proximate result of said unlawful employment practices and in disregard of Plaintiff's rights and sensibilities, Plaintiff has suffered humiliation, degradation, emotional distress, other consequential damages, and lost wages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court:

A. Enter judgment in favor of Plaintiff and against the Defendant for violation of Plaintiff's rights under Title VII of the Civil Rights Act and the Arkansas Civil Rights Act;

B. Declare that the actions of the Defendant constituted unlawful discrimination;

C. Award Plaintiff compensatory damages, including, but not limited to, lost wages and benefits, in such amount as will reasonably compensate Plaintiff for her losses, and damages for emotional distress;

D. Award Plaintiff punitive damages in such amount as the Court deems proper;

E. Award Plaintiff her costs, attorneys' fees, and non-taxable expenses in this action; and

F. Grant Plaintiff such other and further relief that the Court deems just and proper.

**DEMAND FOR TRIAL BY JURY**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

DATED: August 22, 2025

Daniel Cohen, NY Bar # 5481460
Attorney for Plaintiff Yvonne Houston
CONSUMER ATTORNEYS
68-29 Main Street
Flushing NY 11367
T: (718) 770-7901
F: (718) 247-8020
E: dcohen@consumerattorneys.com"